**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR DISTRICT OF MARYLAND**
**(Baltimore Division)**

IN RE:                                                    CASE NO: 24-15728
    RELIABLE ROADSIDE SERVICES
                                                         CHAPTER 11
            Debtor

_____

**DEBTOR'S THIRD AMENDED**
**CHAPTER 11, SUBCHAPTER V PLAN**

By and through undersigned counsel, Reliable Roadside Services, Inc, the above-captioned debtor and debtor-in- possession (the "Debtor" or "Reliable"), proposes the following Third Amended Plan under § 1190 and § 1191 of Title 11of the United States Code (the "Bankruptcy Code"). A brief history of the Debtor's business operations is attached hereto as **Appendix A**.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Please refer to Docket No. 11 ( Scheduling Order) for important information regarding Plan voting and objection deadlines.**

Article I.  Source of Payments

Beginning thirty days after the Effective Date and during the term of this Plan, the Debtor shall submit the disposable income (or value of such disposable income) necessary for the performance of this plan to the creditors (the "Creditors") directly and shall pay the Creditors the sums set forth herein. Should the plan not be confirmed as a consensual plan ("Nonconsensual"), the Debtor shall submit its disposable income to the Subchapter V Trustee (the "Trustee") and shall pay the Trustee the sums set forth herein and the Trustee will make quarterly distributions to creditors.

Article II.  Plan Term

The Effective Date of this Plan is the first business day following the date that the Confirmation Order becomes a final, non-appealable order, and the term of

the Plan ends on the 60th month subsequent to that date.

## Article III.  General Distributions Under Plan

The value of the property to be distributed under the Plan during the term of the Plan is notless than the Debtor's projected disposable income for that same period. Unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately 1.6 cents on the dollar. The Plan also provides for the payment of secured, administrative, and priority claims in accordance with the Bankruptcy Code.

## Article IV.  Classification and Treatment of Claims and Interests

1. The Debtor has classified all claims and interests in accordance with §§ 1122, 1123,and 1190 of the Bankruptcy Code.  A chart detailing each class of claims or interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **Appendix B**.

2. All parties claiming administrative expense priority (including unsecured claims) pursuant to § 507(a)(2) of the Bankruptcy Code but not already treated as such under this plan, shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date, however, if the plan is not confirmed as a consensual plan, the Subchapter V Trustee's applications for compensation shall not be governed by this deadline.  Any claimthat is granted administrative expense priority shall receive the treatment set forth in **Appendix B**.

3. <u>Treatment of Secured Claim of JP Morgan Chase</u>

JPP Morgan Chase ("Chase") is the holder of a secured lien on and against a 2023 Audi RS7 (the "Audi"). Chase filed Proof of Claim No. 3 asserting a secured claim in the amount of $104,851.84. Debtor shall surrender the Audi to Chase as of the Effective Date (if not already surrendered) in satisfaction of Chase's Allowed Secured Claim. Insofar as the Debtor is surrendering any interest it has in and to the Audi on the Effective Date, Class 3 is Unimpaired and therefore the Holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan. Chase's Allowed Unsecured Claim of approximately $80,000[1] shall receive the treatment provided to other Allowed Unsecured Claims in Class 4.

4. <u>Disputed Claims</u>:

  a. A disputed claim is a claim that has not been allowed or disallowed by a final, non-appealable order and, either:

    i. A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

---

[1] This amount is calculated based on the amount of the secured claim less the value of the Audi.

    ii. No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

    b. <u>Settlement of Disputed Claims</u>: The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

### Article V. Payments to Creditors Under Plan

Unless otherwise provided in this Plan or indicated on **Appendix B**, funds received by the Trustee[2] or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the claims as follows:

1. Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth on **Appendix B**.

2. Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth on **Appendix B**.

3. All secured claims shall be paid in accordance with §1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code and/or as agreed to between the Debtor and the secured creditor, as set forth on **Appendix B**.

4. After payment of the foregoing claims, sums received by the Trustee shall be paid, on a pro-rata basis, to allowed general unsecured claims.

5. In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan,the Debtor's equity security holders shall retain their interests in the Debtor as set forth on **Appendix B**.

6. Distributions by the Trustee, to the extent the Plan is confirmed as Nonconsensual should, after reasonable inquiry by the Trustee, funds paid to any creditor remain unclaimed for a period in excess of 180-days, the Trustee shall be entitled to place a stop-payment on such distribution and apply the unclaimed funds to the remaining claims under the Plan.

### Article VI. Secured Claims Generally

The term "secured claim" as used in this Plan shall be consistent with §506 of the Bankruptcy Code and shall mean an allowed claim in an amount equal to the present value of the

---

[22] If the plan is consensual, all payments will be made by the Debtor.

applicable creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.

## Article VII. Secured Claims Being Modified Under § 1190 (Only Applicable to Individual Debtors)

The Debtor does not propose any modifications governed by § 1190(3) of the Bankruptcy Code.

## Article VIII. Trustee Compensation

The Trustee shall be paid for services rendered in this Chapter 11 case an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**. All fees and expenses requested by the Trustee, in his role as Trustee, to include those on Appendix E-1, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

If the Plan is non-consensual the Trustee estimates that fees for work performed post-confirmation will be approximately $650.00 per quarter. Should the Plan be approved as consensual, the amounts on the attached Cash Flow Statement attributable to the Trustee's post-confirmation services would be paid to Class XX, the general unsecured creditors.

All fees and expenses requested by the Trustee, in his role as Trustee, including those on **Appendix B**, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## Article IX. Attorney Compensation

The Debtor's attorney, *Michael P. Coyle*, *of The Coyle Law Group, located at 7061 Deepage Drive, Ste 101B, Columbia, MD 21045,* shall be paid for the services rendered to the Debtor herein as an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**. All fees and expenses requested by the Debtor's attorney, including those on **Appendix B**, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## Article X. Liquidation Analysis

Attached hereto as **Appendix D** is the Liquidation Analysis required by § 1190(1)(B) of theBankruptcy Code and the Local Rules of this Court.

## Article XI. Debtor's Disposable Income and Plan Funding

The Debtor's principal has committed that all disposable income available to the Debtor will be paid to its creditors for the duration of this Plan. An exhibit describing (i) the

Debtor's projected disposable income as defined by § 1191(d)of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under the Plan, and (iv) a summary of payments under this Plan is attached as **<u>Appendix G</u>**.

Article XII.
Property Vests in Debtor Free and Clear

Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

Article XIII.  Confirmed Plan Binding on Debtor and Creditors

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estateand each party in interest, whether or not the claim of such creditor or party is provided forby the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

Article XIV.  Discharge

In the event the Plan is confirmed as a consensual Plan, on the confirmation date of this Plan, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtorwill not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule ofBankruptcy Procedure 4007(c) of the; or (iii) of a kind specified in § 1141(d)(6)(B).

In the event the Plan is confirmed as a non-consensual Plan, the Debtor will receive its discharge at the completion of all payments required under this Plan.

Article XV.  Miscellaneous

15.01    Definitions and Rules of Construction. The definitions and rules of construction setforth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

15.02   Effective Date of Plan. The effective date of this Plan is the first business day following the date on which the Order of Confirmation of the Debtor's Plan is entered by the Court.  To the extent that the Exhibits hereto reference distributions to made in specific months, these dates are based upon the current estimate of the Effective Date and do not govern when actual distributions are to be made. The Debtor will file a Notice of Effective Date within seven days of the Effective Date.  Should the plan be confirmed as Nonconsensual, creditor distributions will be made by the Trustee on a quarterly basis with the first distribution

occurring no earlier than the 4th month following the Effective Date

15.03  Substantial Consummation. Substantial consummation shall be determined upon the Debtor (or Trustee's) payment of all claims due as of the Effective Date. The Debtor will file a Notice of Substantial Consummation within seven days of the occurrence of this event.

15.04    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

15.05    Binding Effect. The rights and obligations of any entity named or referred to in thisPlan will be binding upon, and will inure to the benefit of, the successors or assigns of suchentity.

15.06    Appendices. The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

15.07    Captions. The headings contained in this Plan are for convenience of reference onlyand do not affect the meaning or interpretation of this Plan.

15.08 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws ofthe State of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

15.10 Progress Reports: As required under Local Rule 3022-1(d), the Debtor will file, and serve upon the US Trustee, a Progress Report six (6) months after the entry of the confirmation order and every six (6) months thereafter, each report detailing the progress made towards full administration of the Plan, to include distributions made to-date and any other substantial activities that would impede full administration.

## Article XVI.  Plan Proposed in Good Faith

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

## Article XVII.  Retention of Jurisdiction

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute betweenor among any of the parties to this bankruptcy proceeding, to

determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of theBankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order,and to take any action or make any ruling as may be necessary to carry out the purpose andintent of this Plan.

Article XVIII.  Professional Fees and Expenses.

All fees for services rendered and expenses incurred after the Effective Date by Professionals engaged by the Debtor shall be paid by the Debtor by applications or seeking approval of the  Bankruptcy Court.

Article XIX.  Modification of Plan.

The Debtor reserves the right, in accordance with and subject to any limitations of the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan and to solicit acceptances of any amendments or modifications hereto, at any time prior to the entry of the Confirmation Order.   After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of an Allowed Claim or Interest that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

Article XX. Default

In the event of default, any affected creditor must provide notice to undersigned counsel for the Debtor in  writing to:

> Michael Coyle
> The Coyle law Group
> 7061 Deepage Drive, Suite 101B
> Columbia, MD 21045
> mcoyle@thecoylelawgroup.com.

The Debtor will then have the opportunity to cure any default within 15 days of receipt of the Notice of Default.

If the Debtor fails to cure any default for more than fifteen (15) business days after service of the Notice of Default, then any such creditor may pursue the rights and remedies available to it under non-bankruptcy law without further action in the Bankruptcy Case or notice to the Debtor.

/s/Rjapaul Singh, President
For: Reliable Roadside Services, Inc.

Respectfully submitted,

/s/

_____
Michael P. Coyle (Bar No. 16202)
THE COYLE LAW GROUP
7061 Deepage Drive, Ste 101B
Columbia, MD 21045
443-545-1215

Attorney for the Debtor

DATED:  May 18, 2025

## **Appendix A**
(Debtor's Business History)

Reliable was founded on February 12, 2018 and is incorporated under the laws of the State of Maryland. Reliable provides towing services primarily through its contract with AAA Club Alliance, Inc.

The filing of this case was precipitated by a judgment in the Circuit Court for Anne Arundel County in favor of Gurpreet Singh against the Debtor and its principals in the amount of $393,400 (the "Singh Judgment").

**Appendix B**
(Classification and Treatment of Claims and Interests)

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery[1] |
|---|---|---|---|---|
| | Administrative Expense Claim | $50,000 (includes projected fees for Debtor's Counsel of $20,000 and Trustee fees of $30,000.00 through confirmation). Counsel for the Debtor anticipates that he will be holding $17,000 in his client escrow account as of the Effective Date of the Plan to distribute for Administrative Expenses and will reduce the Administrative Expense Claim accordingly | Upon court approval of Applications for Compensation, counsel for the Debtor will disperse the monies being held in counsel's escrow account to satisfy a portion of the Administrative Expense claims.<br><br>The balance of the Administrative claim for Attorney's Fees will be paid over the term of the Plan.<br><br>The balance of the Administrative Claim of the Subchapter V Trustee will be paid over the term of the Plan.<br><br>Unimpaired. | 100% |
| 1 | Small Business Administration – Secured by UCC | $500,000 | This is a secured claim relating to an EIDL loan. The Debtor will make these payments per the terms of the loan inside of the Plan.<br><br>Impaired. | n/a |
| 2 | Toyota Industries Commercial Finance | $225,643.75 | This claim is a secured claim related to loans provided by the creditor for the purchase of | n/a |

| | | | certain tow trucks.<br><br>The Debtor will make these payments per the terms of the loan inside of the Plan.<br><br>Impaired. | |
|---|---|---|---|---|
| 3 | JP Morgan Chase | $104,851.84 | This claim is a secured claim related to a 2023 Audi RS7. As explained in Article IV.3, the Debtor will be surrendering the collateral as of the Effective Date of the Plan and the balance owed to JP Morgan Chase shall then be treated as General Unsecured Creditor per Class 4<br><br>Unimpaired | n/a |
| 4 | General Unsecured Creditors | $418,080.15 | The General Unsecured Creditors consist of the Internal Revenue Service, JPMorgan Chase Bank, N.A., Capital One, N.A., American Express National Bank, Cellco Partnership d/b/a Verizon Wireless, and Gurpreet Singh. After payments of Classes 1-3 Class 4 will receive a pro-rata share of all actual disposable income of the Debtor.<br><br>Impaired | 1.6% |
| | | | | |

## **Appendix C**
(Claims Being Modified Under Section 1190(3))

**NONE**

## **Appendix D**
(Liquidation Analysis)

## **Appendix D**
(Liquidation Analysis)

**Reliable Roadside Services**

| Sch A/B | Orig/Amd | | Scheduled | Adj | Liq Value |
|---|---|---|---|---|---|
| 3.1 | Amnded | Chase | $17,938.47 | | |
| 3.2 | Amnded | Wells Fargo | 3,926.00 | | |
| 3.3 | Amnded | First National | 0.00 | | |
| 4.3 | Amnded | IMS Barter | 5,300.00 | | |
| 7 | Amnded | BGE Deposit | 4,573.00 | | |
| 7 | Amnded | Hill Mgmt Deposit | 8,147.21 | | |
| 11 | Amended | AR | 32,000.00 | | |
| 39 | Original | Office Furniture | 600.00 | | |
| 47 | Original | Various Tow Trucks | 338,000.00 | | |
| 47 | Original | 2023 Audi RS7 | 98,000.00 | | |
| 50 | Original | Mechanic's Tools | 1,500.00 | | |
| | | Value to Distribute | $509,984.68 | $0.00 | $0.00 |

| | Chapter 7 Liquidation | | | | Chapter 11 Plan | | | |
|---|---|---|---|---|---|---|---|---|
| **Value of Assets** | | | $411,985 | | | | | $411,985 |
| | $Claims | % Paid | Value Remaining | | $ Claims | $ Paid | % Paid | Value Remaining |
| **Secured Claims** | | | | | | | | |
| Class 1 - Small Business Adm (Secured) | | $526,193 | -$114,208 | | | | | |
| Class 2- Toyota Industries Commercial Finance (Secured) | | $225,644 | -$225,644 | | | | | |
| Class 3 JP Morgan Chase (Secured) | | $104,851 | -$104,851 | | | | | |
| | | | $0 | | | | | |
| **Administrative Expenses** | | | | | | | | |
| Chapter 7 Trustee Commission | $22,324 | $0.00 | | | N/A | N/A | | |
| Chapter 11 Administrative Expenses | 50,000 | $50,000.00 | | | $50,000 | $50,000 | | |
| Total  Administrative Expenses | $72,324 | $50,000 | | | $50,000 | $50,000 | 100% | $361,985 |
| **Secured Claims Paid Per Plan** | | | | | | | | |
| Class 1 -Small Business Administration FN1 | 526193 | | | | $526,193 | Paid outside | | |
| Class 2 Toyota Industries Commercial Finance FN1 | 225644 | | | | $225,644 | Paid outside | | |
| Class 3 JP Morgan Chase (Secured) FN2 | 104851 | | | | $104,851 | Surrendered | | |
| **Unsecured Claims** | | | | | | | | |
| Class 9 - Unsecured General | $196,000 | $0 | 0% | | $196,000 | $3,600 | 2% | |

FN1- to be paid outside of plan

FN2 - collateral to be surrendered

## **Appendix E**
(Assumptions and Support for Projected Disposable Income)

The income projections and expense projections included in Appendix G are founded on averages from the Monthly Operating Reports filed in the preceding five months of this case.

Further, the Debtor's business has stabilized over the last few months and the Debtor will realize a significant reduction in monthly operating expenses via the surrender of the Audi to Chase per Article IV.3 of the Plan.

The Debtor's projected disposable income is premised on these trends continuing for the five years of the Plan.

## **Appendix E-3**
(Sources and Value of Funds and Assets for
Distributions)

The sole source of funds for the Plan will be revenue from the Debtor's business.

## **Appendix E-4.A**
(Summary of Payments Under Plan)

The Debtor will be making the following payments during the term of the Plan, beginning thirty days after the Effective Date of the Plan.

The average monthly payments under the Plan in this scenario are as follows:

$100 x 12 months = $1200.00
$100 x 12 months = $1200.00
$100 x 12 months = $1200.00
$100 x 12 months = $1200.00
$100 x 12 months = $1200.00

## **Appendix E-4.B**
(Summary of Payments to Subchapter V Trustee to Fund Plan)

| Payments by Debtor to Subchapter V Trustee During Term of Plan | |
|---|---|
| **Payment Date** | **Payment Amount** |
| June 2025 | 200 |
| October 2025 | 200 |
| February 2026 | 200 |
| June 2026 | 200 |
| October 2026 | 200 |
| February 2027 | 200 |
| June 2027 | 200 |
| October 2027 | 200 |
| February 2028 | 200 |
| June 2028 | 200 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Note: These payments represent anticipated fees incurred by the SubChapter V Trustee for distributions to creditors in a non-consensual plan. All fees incurred by the Subchapter V Trustee are subject to approval of the Court.

**<u>Appendix F</u>**
(Assumed Executory Contracts
andUnexpired Leases)

# APPENDIX G

| DEBTOR: Reliable Roadside Services | CASE NUMBER: | 24-15728 | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month / Year | Effective Month | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Year 1 TOTAL | Year 2 | Year 3 | Year 4 | Year 5 | Plan TOTAL |
| BEGINNING CASH BALANCE | 0 | 0 | 88 | 6 | 0 | 0 | 8 | 86 | 4 | 22 | 40 | -67 | 0 | 188 | 2 | | | 0 |
| CASH RECEIPTS | | | | | | | | | | | | | | | | | | |
| Income | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 486,000 | 506,000 | 516,000 | 516,000 | 516,000 | 2,540,000 |
| Other Income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Cash Receipts | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 40,500 | 486,000 | 506,000 | 515,000 | 515,000 | 515,000 | 2,540,000 |
| CASH DISBURSEMENTS | | | | | | | | | | | | | | | | | | |
| Payroll Expense | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 276,000 | 281,000 | 287,000 | 287,000 | 287,000 | 844,000 |
| Insurance | | | | | | | | | | | | | 0 | 11,500 | 11,500 | 11,500 | 11,500 | 23,000 |
| Phone/Internet | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 3,960 | 3,960 | 3,960 | 3,960 | 3,960 | 11,880 |
| Fuel | 5,254 | 5,254 | 5,254 | 5,254 | 5,254 | 5,254 | 5,254 | 5,254 | 5,254 | 5,254 | 5,254 | 5,254 | 63,048 | 66,000 | 68,000 | 68,000 | 68,000 | 197,048 |
| Workers Compensation | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 11,400 | 11,400 | 11,400 | 11,400 | 11,400 | 34,200 |
| Tolls | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 330 | 3,960 | 4,200 | 4,300 | 4,300 | 4,300 | 12,460 |
| Repairs | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 | 2,400 | 2,400 | 2,400 | 2,400 | 8,400 |
| Parking | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 10,800 | 10,800 | 10,800 | 10,800 | 10,800 | 32,400 |
| | | | | | | | | | | | | | | | | | | 0 |
| | | | | | | | | | | | | | | | | | | 0 |
| | 31,064 | 31,064 | 31,064 | 31,064 | 31,064 | 31,064 | 31,064 | 31,064 | 31,064 | 31,064 | 31,064 | 31,064 | 372,768 | 391,260 | 399,360 | 399,360 | 399,360 | 1,163,388 |
| CASH FLOW FOR PERIOD | 9,436 | 9,436 | 9,436 | 9,436 | 9,436 | 9,436 | 9,436 | 9,436 | 9,436 | 9,436 | 9,436 | 9,436 | 113,232 | 114,740 | 115,640 | 115,640 | 115,640 | 1,376,612 |
| ENDING CASH BALANCE before PLAN PMTs | 9,436 | 9,436 | 9,524 | 9,442 | 9,436 | 9,436 | 9,444 | 9,522 | 9,440 | 9,458 | 9,476 | 9,369 | 113,232 | 114,928 | 115,642 | 115,640 | 115,640 | 1,376,612 |
| Plan payments: | | | | | | | | | | | | | | | | | | |
| admin fees paid to Trustee | | 0 | 200 | 0 | 0 | 200 | 0 | 200 | | 0 | 200 | 0 | 800 | 800 | 800 | 800 | 800 | 2,400 |
| | | | | | | | | | | | | | 0 | 0 | 0 | 0 | | 0 |
| Administrative Claim (Attorney's Fees) | 450 | 400 | 400 | 450 | 450 | 400 | 400 | 400 | 450 | 450 | 425 | 450 | 5,125 | 5,500 | 5,000 | 5,000 | 5,000 | 25,625 |
| Administrativ Claim (Subchapter V Trustee Fees) | 450 | 400 | 400 | 450 | 450 | 400 | 400 | 400 | 450 | 450 | 400 | 425 | 5,075 | 6,000 | 7,500 | 7,500 | 7,500 | 33,575 |
| Class 1 - SBA Loan | 2,840 | 2,840 | 2,840 | 2,840 | 2,840 | 2,840 | 2,840 | 2,840 | 2,840 | 2,840 | 2,840 | 2,840 | 34,080 | 34,080 | 34,080 | 34,080 | 34,080 | 170,400 |
| Class 2 - Toyota (Secured) | 5,578 | 5,578 | 5,578 | 5,578 | 5,578 | 5,578 | 5,578 | 5,578 | 5,578 | 5,578 | 5,578 | 5,578 | 66,936 | 66,936 | 66,936 | 66,936 | 66,936 | 334,680 |
| Class 3 - JP Morgan Chase (Secured) FN1 | | | | | | | | | | | | | | | | | | |
| Class 4 - Unsecured General (1.6%) | 118 | 130 | 100 | 124 | 118 | 10 | 140 | 100 | 100 | 100 | 100 | 75 | 1,215 | 1,610 | 1,300 | 1,300 | 1,300 | 6,725 |
| Total Plan Payments | 9,436 | 9,348 | 9,518 | 9,442 | 9,436 | 9,428 | 9,358 | 9,518 | 9,418 | 9,418 | 9,543 | 9,368 | 113,231 | 114,926 | 115,616 | 115,616 | 115,616 | 573,405 |
| Ending Cash Balance after Plan Payments | 0 | 88 | 6 | 0 | 0 | 8 | 86 | 4 | 22 | 40 | -67 | 1 | 188 | 2 | 26 | 24 | 24 | 803,207 |

Footnotes

1 The Debtor is surrendering the collateral securted by the Class 3 Creditor, and, as such, is making no payments

1
187

5/18/2025

Cash Flow Statement.Amended

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re: | Chapter 11 |
| RELIABLE ROADSIDE SERVICES, INC | Case No. 24-15728 |
| Debtor<br>. | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of May 2025, copies of the Debtor's Third Amended Subchapter V  Plan were served on all parties listed below by first class mail, unless said party is a registered CM/ECF participant:

*Via First Class Mail*

All parties listed on the creditor matrix

*Via ECF*:

Hugh Bernstein
Office of the United States Trustee
101 West Lombard Street
Suite 2625
Baltimore, Maryland 21201

Lawrence Katz
Subchapter V Trustee
Hirschler Fleischer
1676 International Drive, Suite 1350
Tysons, VA 22102-4940

Kevin Feig, Esquire
McNamee, Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
*Attorney for Gurpreet Singh*

Robert S. Brandt
600 Cameron Street
Alexandria, VA 22314
*Attorney for Gurpreet Singh*

/s/ Michael Coyle, Esq.
Michael Coyle, #16202